I have considered the circumstances of this case and the arguments of the counsel, as maturely as I am able, in so short a time, and I now proceed to give my opinion.
Decree,
The first question in this case is, whether Robert Maxwell and Larkin Tarrant, or their representatives, had aright to inforce the mortgage of the negroes given by Tankersley before they bad paid the money to S. Cunningham, or before judgment against them. It would *48 be very hard oti securities if they were bound to wait until tlie creditor had actually obtained judgment against (;]icmj or compelled them to pay the money before they could have recourse to their principal. He might waste his effects before their eyes, and have nothing left to reimburse them after they have been forced to pay the debt,*' perhaps at an enormous loss by forced sales of their property, at an unpropitious time. In this case a mortgage was given, which though absolute on its face, it is agreed by both parties, was given expressly to protect and indemnify them against the effects of the guarantee they had given to Cunningham by their letter of credit in favor of Tankersley. The moment therefore suit was brought against them by Cunningham, I consider them endangered and damaged, and at liberty to protect themselves and raise the money by the sale of the mortgaged property, to pay Cunningham; which was the object of the mortgage. Tankersley was bound in conscience and equity to have paid the debt to Cunningham, and thereby to have prevented his friendly securities being injured, or even endangered by suits for his debts. Failing' in the performance of what conscience and equity required him to do, the court cannot listen to his complaint, that the securities have inforccd the mortgage given by him for the very purpose of protecting them, in case of his failure, and its consequences to them. It is expressly-sworn by the defendants, that several suits were brought against them by Cunningham, on account of the letter of credit, and judgments have ultimately been obtained against them. The property was of a perishable nature, and might be lost; and the transaction had been drawn out to a great length, and both the guarantees were dead, and no steps taken by Tankersley (but one small payment) to settle the debt. I am therefore of opinion that the representatives of Robert Maxwell, and Larkin Tarrant, liad a right to inforce the, mortgage, and bring the ne-groes to sale when they did, to raise money enough to pay the debt, costs and all reasonable expences.
The next question made by the counsel is, whether the tender of the original letter of credit, by J ames- Tar- *49 iant, ibe agent of Tantcrsley, together with maj. John Taylor’s receipt for the assumption of James Tarrant in ' full of the debt to John Cunningham, ought not to have prevented the inforceinent of the mortgage. This question depends upon the authority of maj. Taylor to give up the letter of credit, on James Tarrant’s giving his assumption of the debt to John Cunningham — And in my opinion nothing is clearer than that he had no such power, and that his act was a nullity ; and that the estate of Maxwell and Larkin Tarrant would have remained hound, though the letter of credit had been delivered up under those circumstances. It has been solemnly settled .in various adjudged cases in this country, that if an attorney transcends his powers, and does an act out of the course of Ids profession 1 authority hy which his employer may bo injured, the act is void. Some of them are cases of fraud, others not. In this case no man has imputed, or will impute fraud to major Taylor — -lie acted from beneficent motives; but as the paper was placed in his hands as an attorney at law, to collect the mone'y, ho transcended his powers, when lie undertook to release Maxwell and Larkin Tarrant’s liability to John Cunningham, and to deliver up the letter of credit, which was the evidence of that liability, upon James Tarrant giving his bond to pay the debt in one and two years. No doubt major Taylor deemed James Tarrant adequate to ibe debt, and was willing to risk his own responsibility on that event — but still ho changed the security, and cannot; ho said to have strengthened it, (even if he did not actually weaken it,) which might eventuate to the prejudice of his credit. The client had a right to reject and annul this act of bin, and this power, left the estates of .Maxwell and Larkin Tarrant still hound, and dependant on Cunningham’s will — And lie has since manifested his determination by bringing a suit.subsequent to the tender, and recovering the money from the representatives of Maxwell and Larkin Tarrant. I am therefore of opinion that the representatives of Maxwell anu Tarrant, were not hound to accept the tender; but were at liberty pot* *50 withstanding the same, to pi’occed and sell the negroes, to raise the money to pay Cunningham.
The next ground taken by counsel was that the con-duct of the defendants, Caruth and Thomas Tarrant (for they properly excluded ail other, defendants from' any censure) indicated a settled design to oppress and injure Tankersley, by the seizure of his negroes, by the detention of them, by working them, and finally by selling them all together in one lot, instead of selling them in detail, when the sale of a few would have paid the debt and costs: and that by such conduct they have materially injured and damaged the complainant, for which he is entitled to a remedy. It is my duty to examine these allegations connected with the proofs. I see no reason to censure Caruth and Thomas Tarrant for the seizure of the negroes at cither time. They were in discharge of their duty to the estates they represented, which were endangered by complainant’s delays in paying the debt, guaranteed by Maxwell and Larkin Tarrant. The confinement in goal of the negroes, was in consequence of the lawful seizure; and if Tankersley suffered any damage in lus crop, it was damnum absque injuria. The working of the negroes, (on their plantations) when seized a second time, was irregular; hut it saved the complainant goal fees, and no actual injury resulted from it. With respect to the sale of all the seven negroes, in one lot, I do confess it appears to me to have been highly improper. I am unwilling to attribute improper motives to any man, but I cannot shut my eyes to the strong circumstances which mark this part of the case. It wag certain if a fair sale was made that the negroes would be more than sufficient to pay the debt: yet all are put up for sale. It was probable • that the sale of the negroes, separately, would produce abetter price: and James Tarrant the agent of Tankersley, who has acted throughout the whole of this business humanely and honorably, solicited the side of them separately. Yet advantage was taken of a declaration of Tankersley made long before, that the negroes should be sold altogether, and it was insisted ¡hey should be sold altogether, The sheriff should have *51 known bis duty better •, he was not bound to obey such orders — all tills occurred too when it was believed no one was present, who could give a good price for these ne-groes, so put up for sale. If iti this case the conduct of the defendants, Caruth and Thomas Tarrant, had produced its natural effect, the sale of these negroes at a very low price, and they had gone into their hands, or the hands of strangers, to the prejudice of Tankersley, I should have sent this case to a jury, to have enquired into the damages sustained, and doubtless ample justice would have been obtained in such a case. But the active and humane conduct of James Tarrant, has prevented the necessity of this measure. He stirred up friends, who enabled him to bid boldly for thé negroes, and to offer a fair price. They were knocked down to him. at what ho deemed the full value. Besides he bought them in for Tankersley j and then sold three of them at full value, to Caruth and Thomas Tarrant, to pay the debt to Cunningham, and the remainder he acknowledges are Tankcrsley’s property, though held by him to work out other debts of bis. No injury has therefore resulted to Tankersley, and I do not see any ground to send the case to a jury to enquire the quantum of damage. I believe I should do him an injury, in expense and trouble, by directing such an issue; I will not therefore do it.
It is further contended by the complainant’s counsel, that Tankersley was not liable for any accumulation of the debt and costs and expenses incurred subsequent to the sale of bis negroes. And I have not the least doubt on tliat point. The defendants, Caruth and Thomas Tarrant, were bound on their purchasing the negroes to have paid the debt to Cunningham, or to James Tarrant, to have enabled him to do it, and settle the matter forever. But under pretence of respect to this court, in which Tankersley commenced a suit in November, 1805, (nine months after the sale, and after they should have settled with Cunningham) they make no paypicnt, and keep the negroes; and now contend they are at liberty to insist on Tankersley’s paying all the accumulated interest, costs and expenses, since fh,e sale. If defend *52 ants, Caruth and Thomas Tarrant, had felt as much re* spect for justice, as they pretended for this court, they'would not have acted in this manner. If they were conscious of having done right, they had nothing to fear, and should have paid the money and stopped these expenses : If wrong, they should not have added this step to the other wrong. 1 cannot therefore allow them one cent for interest, costs, or expenses, incurred since the sale.
Farrow and Saxon, for complainant. And Shaw,
It is therefore ordered and decreed, that the defendants Caruth and Thomas Tan-ant, who alone took any active part in these transactions, do account before the commissioner in equity for the amount of the sums of money which they agreed to give for the three negroes they purchased of James Tarrant, the agent of Tankers-ley, and the cash paid by James Tarrant. Ami that in that account they have credit for the'debt really and bonafide due by Tankersley to Cunningham, at the time of the sale in March 1805. Also such expenses as were actually paid for the seizing and detention of the said negroes, for goalees and sheriffs’ fees. Also one counsel fee for the defence of said causes. And that if there be any balance duo by the said defendants on the purchase of the said negroes after allowing these credits, they pay over the saino to the complainant — and that defendants do deliver up the mortgage to said Tankersley. It is also ordered and decreed, that as the necessity of coming into this court arose almost entirely from the defendants, Caruth and Thomas Tarrant, unnecessarily setting up for sale so many negroes in a lot more than sufficient to pay the debt, and from their withholding the payment of the debt to Cunningham after the sale, — they pay ail the costs of this suit out of their own private estates.
There was no appeal from this decree.